COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Bumgardner and Frank
Argued at Salem, Virginia


CLINCHFIELD COAL COMPANY
                                              MEMORANDUM OPINION* BY
v.        Record No. 1463-03-3           CHIEF JUDGE JOHANNA L. FITZPATRICK
                                                  NOVEMBER 25, 2003
ROGER LEWIS JORDAN


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Anne Musgrove (Ramesh Murthy; Lisa Frisina Clement; PennStuart,
          on brief), for appellant.

          Paul L. Phipps (D. Allison Mullins; Lee & Phipps, P.C., on brief), for
          appellee.


      Clinchfield Coal Company (employer), contends the Workers' Compensation

Commission (commission) erred in finding that Roger Jordan (claimant) proved a change in

condition and was entitled to an award of temporary total disability benefits.  Finding no error,

we affirm the commission's decision.

                                          I.

      "On appeal, we view the evidence in the light most favorable to the claimant who

prevailed before the commission."  Allen & Rocks, Inc. v. Briggs, 28 Va. App. 662, 672, 508

S.E.2d 335, 340 (1998) (citations omitted).  "'Decisions of the commission as to questions of

fact, if supported by credible evidence, are conclusive and binding on this Court.'"  WLR Foods

v. Cardosa, 26 Va. App. 220, 230, 494 S.E.2d 147, 152 (1997) (quoting Manassas Ice & Fuel Co.

v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991)).  "Where reasonable inferences

---

      * Pursuant to Code § 17.1-413 this opinion is not designated for publication.

may be drawn from the evidence in support of the commission's factual findings, they will not be disturbed by this Court on appeal." Hawks v. Henrico County School Board, 7 Va. App. 398, 404, 374 S.E.2d 695, 698 (1988). "The commission, like any other fact finder, may consider both direct and circumstantial evidence in its disposition of a claim." VFP, Inc. v. Shepherd, 39 Va. App. 289, 293, 572 S.E.2d 510, 512 (2002). "In determining whether credible evidence exists, [this Court will] not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of witnesses." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991) (citation omitted). "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the commission's finding." Id.

So viewed, the evidence proved that on October 21, 1999, claimant, a roof bolter, twisted his lower back while straightening a roof bolt. Employer accepted the claim and paid benefits accordingly. Claimant missed six days at the outset of his injury and later was out of work July 31, 2000 through September 28, 2000, and October 7, 2000 through October 14, 2000. Claimant initially treated with his family physicians, Dr. Samina Yousuf and Dr. Simon Pennings. In February, 2000, when his symptoms increased, Dr. Yousuf referred him to Dr. Neal Jewell, an orthopedist. Dr. Jewell diagnosed acute lumbar sprain, lumbar spondylosis at L5-S1 and degenerative L5-S1 disc without radiculopathy. He recommended conservative treatment. Claimant had little success with the course of treatment but returned to light duty work. On October 5, 2000, the claimant's hauler, a vehicle used to transport coal, went over a dip or a hole and bounced claimant around while he was in a reclining position. His back pain increased, and he was taken to the emergency room that night. In Dr. Jewell's October 6, 2000 report, he quotes claimant as stating, "I never had any trouble until that night [the night of the original injury]."

In his November 6, 2000 report, Dr. Jewell states,

> I think we are dealing with aggravation of a significant pre-injury
> degree of lumbar spondylosis and I think it is this underlying
> spondylosis that is contributing to the persistence of his symptoms.
> In addition, he continues to express the opinion that he is really
> unable to return to work and I think this attitude is making it
> difficult to encourage him back to regular work activities.

Finally, in his December 7, 2000 report, Dr. Jewell writes, "In response to inquiries from [employer's nurse], I do feel the patient, as far as his acute back injury is concerned, has reached pre-injury status, and, as I stated previously, I believe the majority of his continuing symptoms are related to his underlying or pre-existent lumbar spondylosis."

Claimant saw Dr. Jewell again March 5, 2001 and reported an increase in his symptoms. Dr. Jewell sent him for an MRI and took him off work for one month. He discussed the results of the MRI with claimant on March 12, 2001 and suggested facet blocks. He did not believe claimant was a surgical candidate. His office note is unclear about claimant's work status, but his Attending Physician's Statement (APS), completed at the same time, removed him from work from March 5, 2001 to "indefinite." The APS also stated claimant's diagnosis was degenerative lumbar disc disease, lumbar sprain, resolved, and in response to the question "Is this condition due to injury or sickness arising out of patient's employment?" Dr. Jewell checked the block marked "YES" and wrote "acute lumbar sprain secondary to work injury that appears to be resolved. Continuing pain secondary to degenerative disc disease."

In April, 2001, Dr. Yousuf referred claimant to Dr. Ken Smith, a neurologist. Claimant treated with Dr. Smith on four occasions. He had an initial consult on April 2, 2001. On April 9, 2001, Dr. Smith diagnosed claimant with low back pain of unknown etiology and referred claimant for myelographic studies and a CT scan. The CT scan showed severe osteoarthritis anterolisthesis, and stenosis. The myleogram confirmed the CT scan findings. On April 20, 2001, Dr. Smith discussed various treatment options with claimant including surgery. Claimant

elected to continue conservative treatment. In response to claimant's counsel's questions,

Dr. Smith opined claimant's problems were related to his injury of October 21, 1999 and that

claimant was totally incapacitated from work since March 4, 2001.

The evidence in the record also included medical reports from claimant's family

physicians, Dr. Yousuf and Dr. Pennings, that pre-dated the injury. None of those records show

any history of back pain or back problems.

Claimant filed a change-in-condition application requesting temporary total disability

benefits beginning March 5, 2001 and continuing. The deputy commissioner relied on

Dr. Jewell's opinion that claimant's symptoms were from pre-existing or underlying spondylosis

and, therefore, claimant failed to prove a change in condition. The commission, in reversing the

deputy commissioner, held:

> From this record, we find that claimant has established that his low
> back pain is related to his October, 1999 injury by accident. The
> claimant had no back pain or symptoms prior to the accident.
> Indeed, medical records for other conditions prior to the accident
> confirm that he had no back complaints whatsoever. To the extent
> that he had spondylosis or degenerative disc disease, this was
> completely undocumented and [asymptomatic]. Ever since the
> accident, the claimant has had persistent low back pain. This is
> documented thoroughly in medical records throughout the year
> 2000 and into 2001. To his credit, the claimant continued to
> attempt to work, which continued to exacerbate his pain. Given
> this uncontradicted history, we are simply not persuaded by
> Dr. Jewell's suggestion that these back problems relate only to his
> pre-existing spondylosis. We are satisfied that Dr. Smith's
> opinion, although not explained, is correct.

The employer appealed that decision to this Court, however, we remanded on July 9, 2002

stating the appeal was interlocutory because the commission had remanded it to the deputy

commissioner for entry of an award consistent with their opinion and that had not been

completed. Upon receipt of our July 9, 2002 opinion, the deputy commissioner issued an award

consistent with the commission's opinion which the employer then appealed to the commission. The commission issued another opinion and held:

> On Review, we note that the parties are familiar with the medical history of this case. On April 23, 2003, the Commission found that the claimant had proven a change in condition and that he was entitled to an award of temporary total disability benefits. We were persuaded by Dr. Smith's opinion. On remand, the Deputy Commissioner accepted the Commission's reliance on this medical opinion and awarded compensation benefits beginning April 2, 2001, and continuing. We find no error in this determination.

Employer appealed this decision.

## II.

Employer contends the commission erred in finding claimant was entitled to temporary total disability benefits as a result of a change in condition. Employer argues that the commission lacked sufficient, credible evidence and failed to give the treating physician's opinion the appropriate weight. We disagree.

By statute, a request for review empowers the commission to hear the case *de novo*, see Code § 65.2-705; Goodyear Tire & Rubber Co. v. Pierce, 5 Va. App. 374, 382-83, 363 S.E.2d 433, 438 (1987). "Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing." Hungerford Mechanical Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991). "[Q]uestions raised by conflicting medical opinions must be decided by the commission." Penley v. Island Creek Coal Co., 8 Va. App. 310, 318, 381 S.E.2d 231, 236 (1989). As fact finder, "the probative weight to be accorded [medical] evidence is for the Commission to decide," and if a portion of the medical evidence "is in conflict with other medical evidence, the Commission is free to adopt that view which is most consistent with reason and justice." Georgia-Pacific Corp. v. Robinson, 32 Va. App. 1, 5, 526 S.E.2d 267, 269 (2000) (citation omitted). Nevertheless, "a great weight should be given to the evidence of an attending physician." Bassett Burkeville Veneer v. Slaughter, 21 Va. App. 575,

- 5 -

580, 466 S.E.2d 127, 129 (1996) (citing C.D.S. Constr. Servs. v. Petrock, 218 Va. 1064, 1071, 243 S.E.2d 236, 241 (1978)). "[W]hen it appears . . . that the [treating physician's] diagnosis is shaded by doubt, and there is medical expert opinion contrary to the opinion of the attending physician, then the trier of the fact is left free to adopt that view which is most consistent with reason and justice." Bristol Builders' Supply Co. v. McReynolds, 157 Va. 468, 471, 162 S.E. 8, 9 (1932).

In the instant case, credible evidence supports the commission's finding that claimant is disabled from his employment due to his October 21, 1999 injury. The commission found that claimant

> had no back pain or symptoms prior to the accident. Indeed, medical records for other conditions prior to the accident confirm that he had no back complaints whatsoever. To the extent that he had spondylosis or degenerative disc disease, this was completely undocumented and asymptomatic. Ever since the accident, the claimant has had persistent low back pain.

Employer conceded at hearing that both Dr. Smith and Dr. Jewell were claimant's treating physicians. The medical reports from both Dr. Smith and Dr. Jewell document ongoing and increasing symptoms from October 21, 1999 to the present. The commission was not required to accept Dr. Jewell's opinion and properly weighed it with the report of the other treating physician, Dr. Smith. The commission's decision is supported by credible evidence and for the foregoing reasons, we affirm the decision of the commission.

Affirmed.